FOURTH DIVISION

March 31, 1999

No. 1-98-0703

JOSEPH L. AZZANO, a Minor by ) APPEAL FROM THE

His Mother, Kathy Azzano, ) CIRCUIT COURT OF

) COOK COUNTY

Plaintiff, )

)

v. ) No. 94 L 6084

)

CATHOLIC BISHOP OF CHICAGO, )

an Illinois corporation sole, )

)

Defendant and )

Third-Party Plaintiff-Appellant )

)

) HONORABLE

) MICHAEL J. MURRAY,

(Steven Stukel, a Minor, By His ) JUDGE PRESIDING.

Father, Steven Stukel, and His )

Mother, Olivia Stukel, )

)

Third-Party Defendant-Appellee). )

JUSTICE HALL delivered the opinion of the court:

Plaintiff Joseph Azzano (Azzano) was injured while participating in a school recess activity known as killerball.  Azzano filed suit against the Catholic Bishop of Chicago as the operator of the school (the school), alleging that the school's failure to properly supervise recess activities, to properly train its supervisors, and to otherwise protect the students from injuries during recess caused Azzano's injuries.  The school in turn filed a third-party complaint for contribution against Steven Stukel (Stukel), alleging that he negligently and/or wilfully and wantonly caused Azzano's injuries.  The circuit court denied Stukel's motion for summary judgment on the wilful and wanton claim.  The circuit court granted Stukel's motion for summary judgment with regard to the school's negligence claim on the basis that the claim was precluded by the contact sports exception to negligence liability.  The school now appeals the order granting summary judgment in favor of Stukel.  We affirm the judgment of the circuit court.  

Killerball was a game of keep away that was played on a daily basis during recess at Immaculate Conception grammar school (IC).  The game involved a ball and two teams of approximately 10 to 20 boys each.  Members of the opposing team attempted to catch or stop the person with the ball, who could either try to avoid being caught or pass the ball to a teammate.  In order to cause a change of possession, one had to physically stop the player with the ball.  Simply tagging the person with the ball was not enough to cause a change of possession.  The testimony of the participants was clear that one had to stop the player's motion, which required tackling, jostling, pushing, and other forms of physical contact.  Azzano acknowledged in his deposition that tackling was an integral part of the game and that each game involved between 20 and 30 tackles.  Other participants testified that they had witnessed tackling going on as part of killerball games.  Once the person with the ball was caught, he gave up possession of the ball by throwing it into the air.  The person gaining possession then tried to avoid being caught.  The team in possession of the ball at the end of the recess period was the winner.  

IC prohibited the playing of killerball on school property.  However, the evidence was uncontradicted that the boys regularly played killerball during recess in the presence of school playground monitors.  The playground monitors rarely, if ever, attempted to stop the boys from playing killerball.

On May 18, 1992, several boys, including Azzano and defendant, were playing killerball during the sixth-grade recess at IC.  Azzano testified in his deposition that he was voluntarily participating in the game on that date.  Azzano was injured when he was knocked to the ground by Stukel during the course of the game.

The school contends that the circuit court erred in holding that the contact sports exception to negligence liability applied to preclude Stukel's liability for negligence under the third-

party complaint.  Specifically, the school contends that the contact sports exception to negligence liability should not apply to school recess activities that are expressly forbidden.  Stukel responds that killerball is a contact sport that Azzano voluntarily participated in and therefore the contact sports exception applies to preclude the school's negligence claim.

Our review of the circuit court's grant of summary judgment is 
de novo. Savino v. Robertson, 
273 Ill. App. 3d 811, 652 N.E.2d 1240 (1995).  The granting of summary judgment is proper when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  
Savino, 
273 Ill. App. 3d at 815.      Initially we question whether killerball was a prohibited activity.  While there was a school rule prohibiting the playing of killerball on school property, the uncontroverted evidence established that the boys played killerball on a regular basis during recess in the presence of school playground monitors and  that the playground monitors rarely, if ever, attempted to stop the boys from playing.  Given these facts we fail to see how the school can contend that killerball was a prohibited activity.  However we find that whether killerball was a prohibited activity or not the school can not defeat the well-established contact sports exception.    

Under the contact sports exception, voluntary participants in contact sports may be held liable for injuries to co-

participants caused by wilful and wanton or intentional misconduct, but they are not liable for injuries caused by ordinary negligence.  
Nabozny v. Barnhill, 
31 Ill. App. 3d 212, 334 N.E.2d 258 (1975); 
Oswald v. Township High School District No.214, 
84 Ill. App. 3d 723, 406 N.E.2d 157 (1980).  This rule was originally adopted in 
Nabozny, 
where the plaintiff filed a complaint predicated on ordinary negligence after he was kicked in the head by an opposing player during an organized soccer match.  After noting that the law should not place unreasonable burdens on "free and vigorous participation" in sports and the need to protect participants in sports, the court concluded:

"[A] player is liable for injury in a tort action if 

his conduct is such that it is either deliberate, 

wilful or with a reckless disregard for the safety of 

the other player so as to cause injury to that player*

**."  
Nabozny, 
31 Ill. App. 3d at 215.

Since 
Nabozny, 
Illinois courts have revisited the contact sports exception several times, expanding it to include unorganized, informal, and spontaneous sports activities and games. See 
Pfister v. Shusta, 
167 Ill. 2d 417, 657 N.E.2d 1013 (1995)(exception applied to spontaneous game of kick the can in college dormitory lobby); 
Landrum v. Gonzalez, 
257 Ill. App. 3d 942, 629 N.E.2d 710 (1994)(contact sports exception applied to informal company softball game); 
Keller v. Mols, 
156 Ill. App. 3d 235, 509 N.E.2d 584 (1987)(exception applied to informal, unsupervised game of floor hockey on backyard patio among minors).  

The controlling question regarding whether a participant may maintain a negligence action against his opponent for causing an injury is whether the participants were engaged in a contact sport.  
Pfister, 
167 Ill. 2d at 
425.  
See also 
Keller v. Mols, 
156 Ill. App. 3d 235, 509 N.E.2d 584 (1987)(holding that where plaintiff conceded participation in a contact sport he was precluded from recovery on a negligence claim).  An activity is a contact sport if physical contact is inevitable and inherent in the activity and the parties involved voluntarily assent to the contact by participating.  
Landrum v. Gonzalez, 
257 Ill. App. 3d 942, 629 N.E.2d 710 (1994)(holding that softball is a contact sport because participants in a softball game "necessarily" come into contact with one another and the ball during the course of play); 
Novak v. Virene, 
224 Ill. App. 3d 317, 586 N.E.2d 578 (1991)(holding that downhill skiing is not a contact sport because a skier does not voluntarily consent to contact with other skiers and because such contact is not inevitable); 
Pfister v. Shusta, 
167 Ill. 2d 417, 657 N.E.2d 1013 (1995)(holding that a spontaneous game of kick the can constituted a contact sport because a degree of physical contact among the participants was inherent in the conduct of the game).

In the present case the parties admitted that a certain amount of physical contact was inherent in killerball.  The object of the game was to physically stop the movement of the person with the ball.  This involved tackling, pushing, grabbing and other forms of physical contact.  Simply tagging the person was not sufficient.  It is clear that as in 
Landrum 
and 
Pfister 
a certain amount of physical contact was inevitable in the game of killerball and that the parties voluntarily assented to the contact by participating.  We find that killerball was a contact sport.     
    

The school contends that the contact sports exception should not apply here because killerball was an expressly prohibited activity.  No court in Illinois or elsewhere has considered the question of whether the contact sports exception should apply to activities that have been expressly forbidden by some third party.  The school in essence asks us to create an exception to the well-established 
Nabozny 
rule to apply in cases where the contact sport, though voluntarily played by all participants, was prohibited by some third party.  In support of this request the school contends that the contact sports exception was created to promote "free and vigorous participation in sports" and "the development of discipline and self control" in our youth.  The school argues that this public policy would not be furthered by applying the rule to forbidden activities.  

The facts of this case belie the school's argument that killerball was a prohibited activity.  It was played on a daily basis in the presence of school playground monitors.  In addition to these facts, a look at the supreme court's decision in 
Pfister 
makes it clear that public policy is served by the contact sports exception, which "strikes the appropriate balance between society's interest in limiting liability for injuries resulting from physical contact inherent in a contact sport and society's interest in allowing recovery for injuries resulting from wilful and wanton or intentional misconduct by participants."  
Pfister, 
167 Ill. 2d at 426.    

The 
Pfister 
court did not discuss the need to promote free and vigorous participation in sports.  It is unlikely that the supreme court was concerned with promoting free and vigorous participation in sports or in the development of discipline and self-control when it applied the contact sports exception to a spontaneous game of kick the can in a college dormitory lobby.  Rather, the supreme court made it clear that the public policy underlying the contact sports exception today is the need to strike a balance between protecting participants in sporting activities and the voluntary nature of participation in games where physical contact is inherent and inevitable.  This balance is achieved by limiting liability where the participant chooses to participate in an activity in which physical contact and the risk of injury are inherent.  
Pfister 
makes it clear that the application of the contact sports exception turns solely on the choices made and the risks voluntarily assumed by the participants.  We find that this public policy is furthered by applying the contact sports exception to activities in which the participants voluntarily assume the risks of inevitable physical contact involved in the activity regardless of whether the activity is prohibited by a third party.

In the present case, 
Azzano 
knew of and voluntarily assumed the risks of playing killerball.  He testified that he voluntarily chose to participate in the game of killerball.   Azzano was well aware of the nature of the game, the rules, and the risks involved as he had played killerball on a daily basis for over a year.  Azzano knew that physical contact was an inherent part of the game.  Indeed, he stated in his deposition that tackling occurred every time he played killerball.  The public policy of striking a balance between the need to protect participants in sporting activities and the voluntary nature of participation in a game where physical contact is inherent and inevitable is furthered by applying the contact sports exception in this case.  

We find that killerball was not an activity which was prohibited by the school.  We further find that the contact sports exception applies to preclude Stukel's liability in negligence for the injuries Azzano received while playing killerball even if the school had actually prohibited the playing of killerball.  The trial court did not err in granting summary judgment in favor of Stukel.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.