Eric J. **LEONARD,** by His Parent and Next Friend, Nancy **MEYER,** and Nancy Meyer, Individually, Appellants,

v.

Chad **BEHRENS,** Individually, by His Parent and Next Friend, Gary Behrens, Appellee.

No. 97–2191.

Supreme Court of Iowa.

Oct. 13, 1999.

Robert J. McGee of Robert J. McGee, P.C., Clinton, for appellants.

T. Randy Current of Frey, Haufe & Current, P.L.C., Clinton, for appellee.

Considered by LARSON, P.J., and CARTER, TERNUS, CADY, and HARRIS,* JJ.

PER CURIAM.

Plaintiffs, Eric Leonard and his mother Nancy Meyer, appeal the judgment of the district court dismissing their case following the defendant's motion for directed verdict. Plaintiffs had claimed the defendant, Chad Behrens, was negligent in shooting Eric in the eye during a game of paintball and in failing to warn him of the tendency of the goggles Chad had supplied him to fog up. The court ruled that the "contact sports exception" to the general rule of negligence applied whereby the plaintiff was required to prove that the defendant acted recklessly and that the plaintiffs had failed to present evidence of such recklessness. We find the district court correctly applied the recklessness standard in judging the defendant's actions during the paintball game. We affirm.

## I. Factual Background and Proceedings.

On March 6, 1994, a group of teenagers assembled to play a game called "paintball" on a farm. Participants Eric Leonard and Chad Behrens were both fifteen years old. Eric had never played the game before but Chad regularly participated in paintball games. The purpose of the game was to strike players on the opposing side with gelatin capsules filled with colored vegetable oil which are intended to break on contact. Once a player is struck by a ball, he or she is considered out of the game.

Each participant had a slingshot to propel the paint balls. The participants also

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

had goggles which they were instructed to wear during the games to protect their eyes. Chad had provided Eric with goggles even though he knew they had a tendency to fog over. During game play, Eric's goggles did, in fact, fog over. Eric removed the goggles from his eyes and placed them over his head. While the goggles were up, Eric was shot in the eye with a paint ball apparently fired by Chad.

Eric and his mother brought an action against Chad seeking compensation for Eric's injuries. They relied on two theories. First, they contended Chad breached a duty to Eric in shooting him in the eye. Second, they contended Chad breached a duty when he failed to warn Eric that the goggles had a tendency to fog up.[1]

Because the standard of care for participants playing a game such as paintball was an issue of first impression in Iowa, Chad filed an application for adjudication of law points prior to trial. Looking to other jurisdictions for guidance, the district court adopted the majority rule known as the "contact sports exception." This exception provides that a participant in a contact sport may only bring suit for injuries received during the game for acts of another participant done to intentionally inflict injury or done in reckless disregard for the safety of the other participant. The court found that paintball is a contact sport, and the exception applied to both of the plaintiffs' theories of recovery.

At trial, Chad moved for a directed verdict at the close of plaintiffs' evidence. The court ruled that substantial evidence showed the participants discussed the rules of the game before playing, including the use of eye goggles, and there was no

evidence Chad knew Eric was not wearing his goggles when he shot the paint ball. Thus, the court held as a matter of law that Chad was not reckless in failing to warn Eric the goggles had a tendency to fog up, nor was his conduct in shooting a paint ball at Eric reckless. The district court ruled the plaintiffs failed to prove Chad's conduct fell outside the protection of the contact-sports exception and entered judgment for Chad. Plaintiffs appeal.

Plaintiffs argue the district court should have adopted a general negligence standard for contact sports. They further maintain that even if the contact sports exception standard was generally applicable, paintball is not an activity which qualifies as a contact sport. Plaintiffs contend that under either standard, they presented substantial evidence to submit the case to the jury.

## II. Scope of Review.

Our scope of review is for correction of errors at law. Iowa R.App. P. 4; *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 202 (Iowa 1994). We review the evidence in the light most favorable to the nonmovant and determine whether sufficient evidence existed to warrant submission of the issues to a jury. *Podraza*, 524 N.W.2d at 202. This requires us to consider whether reasonable minds could differ on the issues in controversy. *Id.*

## III. Analysis.

 In this appeal we must determine whether the district court applied the proper standard of care to the plaintiffs' claim regarding the defendant's actions in shooting the plaintiff.[2] There is no report-

---

1. The plaintiffs also contended in the district court that Chad breached a duty to warn Eric of the need to wear goggles during the game. The trial court ruled that there was insufficient evidence to support submission of this theory to the jury. On appeal, the plaintiffs acknowledge that "Eric testified the only rule which he was aware of was *to keep your goggles on* and when you get hit with a paint ball you are out." (Emphasis added.) Given

this fact, the plaintiffs do not contend on appeal that the court erred in directing a verdict on this specification of negligence.

2. The plaintiffs also assert that their claim of negligent failure to warn is not subject to a recklessness standard and should have been submitted to the jury. We need not consider whether the plaintiff owed a duty to the defendant to warn him of the tendency of the

ed Iowa case concerning the duty of care owed by one participant in a contact sport to another participant. In *Dudley v. William Penn College*, 219 N.W.2d 484 (Iowa 1974), we considered a personal injury action brought by a collegiate baseball player against his coach and the college after he was struck by a foul ball. We observed:

> [P]layers in athletic events accept the hazards which normally attend the sport. . . .
>
> What the law regards as unreasonable risk of harm to players is somewhat unique in athletic contests, since risks naturally attend such events. Hence the cases involving successful plaintiffs are not plentiful. Most injuries in athletic contests result from the rough and tumble of the game itself.

*Dudley*, 219 N.W.2d at 486 (citations omitted). Although the negligence of another player was not at issue in *Dudley*, the above language indicates we recognize a participant in an athletic event assumes certain risks normally associated with the activity.

■ In analyzing plaintiffs' claim regarding Chad's conduct in shooting Eric, we must balance on one side the interest in promoting vigorous athletic and sporting competition and the interest in protecting those who participate in those events on the other. The majority of jurisdictions that have considered this issue have concluded that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety. *See, e.g., Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516 (10th Cir.1979); *Nabozny v. Barnhill*, 31 Ill.App.3d 212, 334 N.E.2d 258 (1975); *Hoke v. Cullinan*, 914 S.W.2d 335 (Ky.1995); *Gauvin v. Clark*, 404 Mass. 450, 537 N.E.2d 94, 96–97 (1989). This principle is commonly referred to as the "contact sports exception" to the general rule of negligence.

The majority view evolved from the notion a participant's assumption of risk lowers the duty of care other participants owe that person from ordinary negligence to recklessness.[3] *See* Stanley L. Grazis, Annotation, *Liability of Participant in Team Athletic Competition for Injury to or Death of Another Participant*, 55 A.L.R.5th 529 (1998). The assumption of risk extends to dangers for which the person assuming the risk had actual knowledge and an appreciation of their character. *Id.* For example, a team sport participant generally assumes unintention-

---

goggles to fog up, nor does the court need to decide whether the breach of such a duty is judged by a negligence or recklessness standard. It is undisputed in the record that, prior to the time the plaintiff was injured, he knew the goggles fogged up. Therefore, there was no proof of proximate cause and the trial court correctly directed a verdict on the plaintiffs' failure-to-warn claim. *See Lovick v. Wil-Rich*, 588 N.W.2d 688, 700 (Iowa 1999) (proximate cause is an essential element of a duty to warn case); *see also Balder v. Haley*, 399 N.W.2d 77, 81–82 (Minn.1987) (holding no causal relationship existed between injury and failure to warn as a matter of law when plaintiff was aware of danger presented).

3. Our cases have recognized two distinct meanings of the term assumption of risk. In its primary meaning, assumption of risk expresses the proposition that the defendant was not negligent, either because the defendant owed no duty or did not breach a duty. *Nichols v. Westfield Indus., Ltd.*, 380 N.W.2d 392, 399 (Iowa 1985). It is based on the concept that a plaintiff may not complain of risks that inhere in a situation despite proper discharge of duty by the defendant. *Id.* Primary assumption of risk is merely a label for denying that a duty existed or that a duty was breached. *Id.* Although it is preferred an issue be framed in terms of whether a duty is owed, primary assumption of risk remains a viable affirmative defense. *Chapman v. Craig*, 431 N.W.2d 770, 771 (Iowa 1988).

In its secondary meaning, assumption of risk is an affirmative defense to an established breach of duty in which the defendant contends the plaintiff acted unreasonably in encountering a known risk. *Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 146–47 (Iowa 1992). With the adoption of comparative negligence, assumption of risk, in its secondary meaning, has been abolished in cases in which the defendant could also allege contributory negligence. *Id.* at 147. We view the case before us under rules of comparative negligence. *See* Iowa Code ch. 668 (1997).

al injuries caused by another participant; however, injuries inflicted intentionally or as the result of reckless disregard for safety are not assumed. *Id.*

Courts adopting the recklessness standard emphasize the standard is necessary to preserve vigorous and active participation in contact sports without fear of liability for merely negligent bodily contact. *See, e.g., Jaworski v. Kiernan*, 241 Conn. 399, 696 A.2d 332, 337 (1997). As the court in *Jaworski* explained:

> If simple negligence were adopted as the standard of care, every punter with whom contact is made, every midfielder highsticked, every basketball player fouled, every batter struck by a pitch, and every hockey player tripped would have the ingredients for a lawsuit if injury resulted.

*Id.* at 338.

Likewise, these courts express concern over the public policy of stemming the possible flood of litigation that might result from adopting simple negligence as the standard of care to be utilized in sporting contests. *See id.* at 337–38. Again, the *Jaworski* court noted,

> [w]hen the number of athletic events taking place in Connecticut over the course of a year is considered, there exists the potential for a surfeit of lawsuits when it becomes known that simple negligence, based on an inadvertent violation of a contest rule, will suffice as a ground for recovery for an athletic injury.

*Id.* at 338. We concur in both of these concerns.

■ The trial court here applied the recklessness standard as contained in the Restatement (Second) of Torts section 500 (1965) in granting a directed verdict to the defendants. This appears to be the consensus standard among jurisdictions adopting the contact sports-exception. *See, e.g., Hoke*, 914 S.W.2d at 338. The Restatement defines reckless disregard as:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500, at 587.

We have applied a similar expression of the recklessness standard in other situations. In *Morris v. Leaf*, 534 N.W.2d 388 (Iowa 1995), we held that in order to prove recklessness as the basis for a duty, a plaintiff must show that the actor has intentionally done an act of an unreasonable character in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it and so great as to make it highly probable that harm would follow. *Id.* at 391; *see also McGough v. Gabus*, 526 N.W.2d 328, 334 (Iowa 1995); W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 34, at 213 (5th ed.1984).

■ The foregoing analysis begs the question of whether paintball, of the variety engaged in by Eric Leonard and Chad Behrens, even constitutes a contact sport to which the recklessness standard generally has been applied. Plaintiffs contend the recklessness standard should not be applied to the present situation in which juveniles are "engaging in unsupervised non-athletic endeavors with equipment that was not intended for such activity and was otherwise defective."

Courts analyzing whether a particular activity is a contact sport such that the recklessness standard would be applicable have generally found "the relevant inquiry is whether the participants were involved in a contact sport, not whether the sport was formally organized or coached." *Pfister v. Shusta*, 167 Ill.2d 417, 212 Ill.Dec. 668, 657 N.E.2d 1013, 1017 (1995). Thus,

the standard has been applied to unorganized, informal, and spontaneous sports activities and games. *See, e.g., Pfister,* 212 Ill.Dec. 668, 657 N.E.2d at 1013 (spontaneous game of kick-the-can in lobby of college dormitory); *Azzano v. Catholic Bishop of Chicago,* 304 Ill.App.3d 713, 237 Ill. Dec. 694, 710 N.E.2d 117 (1999) (school recess activity known as "killerball"); *Keller v. Mols,* 156 Ill.App.3d 235, 108 Ill.Dec. 888, 509 N.E.2d 584 (1987) (unsupervised game of floor hockey among minors on backyard patio); *Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699 (1990) (child's game of kick-the-can).

In at least two cases, a party brought suit after being shot in the eye during a paintball game. *See Taylor v. Hesser,* —— P.2d ——, 1998 WL 764811 (Okla.Civ.Ct. App.1998); *Moore v. Phi Delta Theta Co.,* 976 S.W.2d 738 (Tex.Ct.App.1998), *review denied,* —— S.W.2d ——, 1999 WL 450865 (Tex.1999). In *Taylor* the court concluded the defendant owed no duty to the plaintiff to avoid hitting him with paint balls because the plaintiff consented to the risks associated with the game. Although the court did not specifically discuss the contact sports exception, it stated the outcome of the case was controlled by a prior case, *Reddell v. Johnson,* 942 P.2d 200 (Okla. 1997), that did adopt that exception. *Taylor,* 1998 WL 764811 at *3, at ——; *see Reddell,* 942 P.2d at 204 (finding exception applied to player in a "BB gun war" game who suffered an eye injury). In *Moore* the court indicated the contact-sports exception would apply to a participant in a paintball "war game," but the court refused to extend the exception to nonparticipants. *Moore,* 976 S.W.2d at 741–42.

We conclude paintball warrants consideration as a contact sport, thus implicating the recklessness standard. The record shows the players divided into teams, confined their play to a specific area, and all participants had goggles and appropriate clothing. The object of the game was to shoot at and strike players on the opposing team with paint balls. Among a number of specific rules laid out and discussed prior to the game was that goggles were to be worn during game play. Although paintball is not as widely recognized, traditional, or organized as baseball or basketball, the facts in this case clearly show the children were involved in an informal contact game in which each player consented to being shot with the paint balls.

■ We find the reasoning and views expressed in those majority jurisdictions adopting the contact-sports exception compelling and suitable for application in Iowa. We therefore hold that paintball is a contact sport for which a participant's liability is determined under a recklessness standard. In games in which physical contact is inherent, indeed, the very purpose of the game as in paintball, rules infractions and mishaps are virtually inevitable and justify a different standard of care.

■ Applying this standard, we conclude the trial court correctly ruled that there was not substantial evidence of Chad's recklessness to support submission of the plaintiffs' claim to the jury. The record does not support a finding that Chad knew Eric was not wearing goggles or that Eric attempted to alert other participants that he was not wearing them. Under these circumstances, the evidence would not support a finding that Chad shot the paint ball at Eric knowing or having reason to know that his conduct created an unreasonable risk of physical harm to Eric, or that harm was highly probable to follow his actions. Therefore, the district court did not err in directing a verdict in favor of the defendants and we affirm.

**AFFIRMED.**