CADY, Justice.
This appeal arises from an action by a participant in a softball practice against a coparticipant for head injuries suffered from a flying bat when the defendant released his bat while hitting a pitched ball. We primarily consider the application of the contact-sports exception and the sufficiency of evidence to support a finding of recklessness. The district court granted summary judgment for the defendant. We transferred the case to the court of appeals, who affirmed the decision of the district court. We granted further review. *74 On our review, we vacate the decision of the court of appeals, reverse the decision of the district court, and remand for trial.
I. Background Facts and Prior Proceedings.
Benjamin • Feld and Luke Borkowski were teammates on an intramural slow-pitch sixtéen-inch softball team, composed of male high school students, during the summer of 2005. Feld and Borkowski were experienced players, having played various levels of the game throughout their childhoods. The team assembled to play games against other teams and to practice among themselves. Practice primarily consisted of batting practice, which allowed each player the opportunity to swing at approximately twenty pitches before the next player rotated into the batter’s position. The team members who were not batting or pitching played various field positions, except catcher, and attempted to catch or retrieve the balls.
During a batting practice on June 2, 2005, Feld was playing first base while Borkowski batted. Home plate and first base were sixty feet apart, the customary arrangement in slow-piteh softball. Bor-kowski, a right-handed hitter, swung at pitch after pitch using an aluminum bat. He was known as a strong hitter. After about a dozen pitches, Borkowski hit a high fly ball into foul territory on the third base side of the field. A split second after the bat made contact with the ball, it left Borkowski’s hands. Most of the team watched the fly ball sail over the head of the third baseman as the bat, almost simultaneously, flew directly down the first baseline, in a horizontal helicopter motion, toward Feld. Borkowski yelled Feld’s nickname in an effort to warn him of the flying bat. The warning was ineffective, and the bat struck Feld in the forehead. Feld suffered a severe injury to his left eye.
Feld and his parents filed a negligence action against Borkowski. The lawsuit sought damages for medical expenses and other associated damages. Borkowski denied the claims of negligence in his answer to the petition and asserted assumption of the risk as an affirmative defense. He also claimed softball was a contact sport, and no liability could be imposed because his conduct was not reckless. Following discovery, Borkowski moved for summary judgment on the grounds liability was limited under the contact-sports exception and the facts of the incident failed to generate a jury question that his conduct was reckless.-
In resistance to the motion for summary judgment, the Felds first argued that softball is not a contact sport, as a matter of law, and therefore did not qualify for the exception to the rule of negligence. In the alternative, the Felds claimed Borkowski’s actions in releasing the bat constituted reckless conduct. In support of this argument, the Felds presented expert testimony from Ed Serváis, head baseball coach at Creighton University. Serváis is an experienced college coach and a former baseball player. He testified he had never seen a right-handed batter hit a ball left of third base and lose control of a bat by releasing it in the direction of first base. Further, Serváis testified the only way a right-handed batter could hit a first baseman with a bat in such a manner is if the batter “followed through and rotated around after striking the foul ball and deliberately threw the bat or let go of the bat in such a way that it was flung with considerable force through the air towards the first base position.” Thus, the Felds claimed, even if the contact-sports exception to negligence applied, an issue of material fact existed as to whether Borkowski *75 acted recklessly or intentionally in losing control of his bat.
The parties disputed the manner in which the bat left Borkowski’s hands after he hit the pitch. Borkowski maintained the bat slipped from his sweaty hands on the hot June day, he did not rotate his body completely around before releasing the bat, and he did not intentionally throw the bat towards first base. Members of the team, including Borkowski, referred to the incident as “a freak accident.”
Following a hearing, the district court granted Borkowski’s motion for summary judgment. The court found softball qualified as a contact sport because it is an “athletic activity] which involve[s] the general risk of physical injury to the participants,” and liability could only be based on reckless or intentional conduct. The court concluded Borkowski’s actions were not outside the normal course of playing softball because any misconduct would have occurred while swinging at a pitch during softball practice. Although the court recognized Feld may not have accepted the risk of being struck by a bat at first base, it concluded the risks were not specific to the type of injury he received, but instead included all inherent dangers in the normal course of playing softball. The district court also found the contact-sports exception barred the claim against Borkowski because the Felds failed to allege in their petition that Borkowski’s conduct was reckless or deliberate.
The Felds filed an appeal from the district court’s order granting summary judgment. They claimed the district court erred in finding softball to be a contact sport. Additionally, they claimed the summary judgment facts generated a jury question on whether the conduct of Bor-kowski was reckless. Finally, they claimed the contact-sports exception was inapplicable to the particular circumstances of this case because those circumstances showed Feld did not accept the risk of the particular injury he sustained. In the end, the Felds believed the case should be tried under a negligence standard, yet based solely on the argument that softball was not a contact sport.
We transferred the case to the court of appeals. The court of appeals affirmed the district court, concluding physical contact is generally inherent in the game of softball and there was no conclusive evidence of recklessness sufficient to present an issue of material fact for a fact finder. The Felds sought, and we granted, further review.
II. Standard of Review.
We review a district court’s ruling on a motion for summary judgment for correction of errors at law. Sweeney v. City of Bettendorf, 762 N.W.2d 873, 877 (Iowa 2009). Summary judgment is appropriate when the moving party proves no genuine issue of material fact exists on the record. Berte v. Bode, 692 N.W.2d 368, 370 (Iowa 2005). If reasonable minds can differ on how a material fact issue should be resolved, summary judgment should not be granted. Hills Bank & Trust Co. v. Converse, 772 N.W.2d 764, 771 (Iowa 2009). We make every legitimate inference that can be reasonably deduced from the evidence in favor of the nonmov-ing party. Id.
III. Analysis.
A. Contact-Sports Exception. As a general rule, our law recognizes that every person owes a duty to exercise reasonable care to avoid causing injuries to others. Thompson v. Kaczinski, 774 N.W.2d 829, 834 (Iowa 2009); Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7(a), at 77 (2010) [hereinafter Restatement (Third) ]. A breach of *76 this duty will subject the actor to liability if the injury caused by the actor’s conduct resulted from the risks that made the actor’s conduct negligent. Restatement (Third) § 6, at 67; Thompson, 774 N.W.2d at 839. In most all cases involving physical harm, we have adopted the view that a duty of reasonable care exists, and it is for the fact finder to consider the specific facts and circumstances to determine if the actor breached the duty. Thompson, 774 N.W.2d at 834-35.
While the duty to exercise reasonable care accompanies each individual in most all activities of life, some activities or circumstances have been excepted from the reasonable-care duty in favor of the imposition of a less stringent duty of care for participants in the activity to protect others from injury. See id. (recognizing occasions when countervailing principles and policies justify displacement or modification of the general duty to exercise reasonable care). One such activity that has been identified as an exception is contact sports. Prior to our decision in Thompson to follow the analytical framework of the Restatement (Third) of Torts for claims of negligence involving physical harm, we followed other states in excepting participants in contact sports from constraining their actions under the conventional duty to act as a reasonable person. See Leonard ex rel. Meyer v. Behrens, 601 N.W.2d 76, 81 (Iowa 1999).[1] In finding the game of paintball to be a contact sport in Leonard, we imposed a duty for participants in the sport to merely refrain from reckless or intentional conduct. Id. at 81 (“We therefore hold that paintball is a contact sport for which a participant’s liability is determined under a recklessness standard.”); see also Pfister v. Shusta, 167 Ill.2d 417, 212 Ill.Dec. 668, 657 N.E.2d 1013, 1013 (1995) (holding contact-sports exception imposes “the duty to refrain from willful and wanton or intentional misconduct”); Restatement (Third) § 7 cmt. ⅞ at 78 (recognizing “some courts have modified the general duty of reasonable care for those engaging in competitive sports to a more limited duty to refrain from recklessly dangerous conduct”). This standard recognizes that known risks associated with a contact sport are assumed by participants in the sport, and it is inappo-site to the competitiveness of contact sports to impose a duty on participants to protect coparticipants from such known *77 and accepted risks through the exercise of reasonable care.[2] See Leonard, 601 N.W.2d at 79 & n. 3 (noting assumption of the risk in its primary sense is a defense to negligence). The standard also recognizes that athletes who step onto the playing field to compete are not completely free from legal responsibility for their conduct that creates a risk of injury, but are restrained under a substantially lower duty of care. See Nabozny v. Barnhill, 31 Ill.App.3d 212, 334 N.E.2d 258, 260-61 (1975).
 In examining the extent or scope of the contact-sports exception, we recognize a sport involving contact between participants or contact with instruments or objects used by participants provides knowledge and understanding to the participants of the inherent risks of harm that can be created. This applies not only by the conduct that occurs within the rules and objectives of the sport, but also by conduct from participants who fail to properly execute an activity contemplated by the sport. See Leonard, 601 N.W.2d at 79 (recognizing that participants in athletic events voluntarily endure “risks normally associated with the activity”). As we observed in Leonard, the violation of a sport’s rules creates a risk of injury to participants that would not necessarily exist without the infraction, such as when players run into punters in football, midfielders are high-sticked in lacrosse, basketball players are fouled, batters are hit by pitched balls in baseball, and hockey players are tripped. Id. at 80. Yet, such contact is nevertheless inherent in each game because no participant can play the game error free. Thus, players accept risks of harm inherent in a sport both derived from activities that are executed as contemplated by the sport and activities that are improperly executed. For example, a base runner in softball can be struck and injured by a ball hit by a batter or can be struck and injured by a wild throw from a fielder. In both instances, the risk of harm from contact is inherent in the game, even though the batter is credited with a hit and the fielder is charged with an error. These known risks, under the contact-sports exception, support a duty of care less stringent than reasonable care.
In contrast, conduct by participants done with reckless disregard for the safety of others or with an intent to harm others beyond the rules and objectives of the sport creates risks that are not inherent in the sport. See id. at 79-80. Such risks do not inhere in the sport because conduct involving recklessness or intent to harm presents risks substantially greater than risks of negligent conduct. See Restatement (Second) of Torts § 500, at 587 (1965) [hereinafter Restatement (Second) ] (risk involved in reckless conduct is “substantially greater” than risk involved in negligent conduct).[3] For example, the risk *78 of harm to a base runner in softball is much greater when a fielder throws a ball intended to hit the base runner than when a fielder throws a ball to another fielder, intending for the other fielder to complete the play by tagging or forcing the base runner out, but instead misfires and hits the runner with the ball. Thus, the recklessness standard captures conduct that imposes risks of harm to participants that are not a normal part of the sport. See Leonard, 601 N.W.2d at 79-80 (“[I]njuries inflicted intentionally or as the result of reckless disregard for safety are not assumed.”).
The parties to this ease do not challenge the viability of the contact-sports exception in Iowa, but only challenge its application to the sport of softball. Our obligation on appeal is to decide the case within the framework of the issues raised by the parties. Worthington v. Kenkel, 684 N.W.2d 228, 234 (Iowa 2004). Consequently, we do no more and no less.[4]
The threshold inquiry is whether the activity or sport engaged in by the parties was an activity or game covered by the contact-sports exception. This analysis does not focus on whether the participants were engaged in a formally organized or coached sport, but instead centers on whether the activity inherently involves the risk of injurious contact to participants. See Leonard, 601 N.W.2d at 80-81 (applying the recklessness standard to an informal game of paintball and rejecting formality and organization as threshold qualifications). Not all sports inherently involve contact capable of injury. Yet, even the description of a particular sport as a contact sport can vary depending upon the purpose for which a sport is classified as a contact activity. See 34 C.F.R. § 106.41(b) (2009) (defining contact sports for purposes of gender discrimination on school sports teams and excluding softball as a contact sport). Notwithstanding, the purpose of deciding whether an activity is a contact sport is to determine if the risk of harm of injurious contact was known and understood as a part of the sport. If the risk of injury is a part of the sport, then the participants must only refrain from reckless or intentional conduct causing injury.
*79 B. Softball as a Contact Sport. With this background in mind, we turn to answer the issue presented by the arguments of the parties. In the sport of softball, the risk of injury to participants includes the risk of contact between a participant and a bat swung by a batter, as well as other risks of contact from other actions by participants that are part of the game. Batting and swinging a bat are normal and expected activities of the game, and participants familiar with the sport know and understand that a risk of harm is presented to other participants by the activity. In particular, a bat can be released from the hands of a batter during a swing. This scenario presents a risk of harm from injurious contact between the bat and other participants on or around the playing field.
Nevertheless, the Felds argue that liability should not be limited to recklessness or intentional conduct by generally labeling a sport as a contact sport. Instead, they argue the particular contact involved in causing the injury in each case must be analyzed to determine if the specific incident involved contact that should have been anticipated. The Felds assert this analysis is consistent with the underlying assumption-of-the-risk premise of the contact-sports exception. Thus, they argue softball may be a contact sport for a player like a catcher, but not for an individual playing first base when a right-handed hitter hits a ball left of the third baseline. More specifically, the Felds argue no first baseman could have anticipated harm from a bat under the circumstances of the case.
In Leonard, we examined the nature, objectives, rules, and traditions of the particular sport or game to determine if paintball was a contact sport so as to exempt participants from liability for injury to co-participants predicated on negligence. 601 N.W.2d at 81. We did not dissect the game to determine if certain parts should be subjected to the exception, but looked at the game itself. This approach is consistent with the purpose of maintaining the desired spirited competition in sports; the law cannot expect competitors in a contact sport to play under multiple standards of care, just as it cannot expect competitors in a contact sport to apply standards of reasonableness when engaged in conduct that only presents a risk of harm inherent in the sport.
Thus, we conclude softball for purposes of tort liability is a contact sport, and this conclusion is sufficient to transform liability for an injury sustained by a participant while engaged in the sport from a standard of negligence to a standard of recklessness. Clearly, batting is normal activity in the sport of softball and creates a risk of harm to participants in a number of ways, including a risk that the bat will be released during the swing in some way and will become an instrument of harm to participants in some way. Other jurisdictions that have examined liability in the context of softball have similarly concluded that softball presents inherent risks that qualify the sport for the recklessness standard. See, e.g., Landrum v. Gonzalez, 257 Ill.App.3d 942, 196 Ill.Dec. 165, 629 N.E.2d 710, 715 (1994); Picou v. Hartford Ins. Co., 558 So.2d 787, 790 (La.Ct.App.1990); Craum v. Campo, 136 N.J. 494, 643 A.2d 600, 608 (1994); O’Neill v. Daniels, 135 A.D.2d 1076, 523 N.Y.S.2d 264, 264-65 (N.Y.App.Div.1987). As such, the contact-sports exception applies in this case, and Borkowski can only be liable for the injurious contact with Feld if his actions were intentional or reckless.
C. Reckless Conduct. The district court concluded the Felds failed to claim in their petition that Borkowski was reckless, and the undisputed facts presented in the course of the summary judgment proceedings did not support a finding of *80 recklessness as a matter of law. It found Feld accepted the risk of harm presented by a batter who negligently released a bat from his hands while swinging at a pitch, even though it would be unforeseeable that a first baseman would be in the zone of danger for contact with a bat by a right-handed hitter who had swung and hit the pitch with the bat.
We commence our review of this portion of the district court decision by recognizing that our inquiry is to determine whether the Felds presented facts sufficient to support a jury question on the issue of whether Borkowski’s actions in releasing the bat during the swing were reckless. We begin by noting it is not fatal to the Felds’ lawsuit that he only asserted a claim for negligence in his petition rather than asserting a claim for both negligence and recklessness. Borkowski raised the contact-sports exception as a defense. The contact-sports exception was also the basis for Borkowski’s motion for summary judgment, and the Felds resisted the summary judgment by arguing Bor-kowski’s conduct amounted to recklessness. The Felds’ resistance to the motion for summary judgment placed the issue of recklessness squarely in play, predicated on the understanding that it supported an actionable claim for liability based on recklessness.[5] See Rieff v. Evans, 630 N.W.2d 278, 292 (Iowa 2001) (“[W]e do not require a petition to allege a specific legal theory.”); see also Smith v. Smith, 513 N.W.2d 728, 730 (Iowa 1994) (“A petition gives ‘fair notice’ if it informs the defendant of the incident giving rise to the claim and of the claim’s general nature.”). Thus, the question is whether the Felds produced sufficient evidence of recklessness to withstand summary judgment.
We find the affidavit from Ed Serváis, the long-time baseball coach, supported a jury question on recklessness. The facts are undisputed that Borkowski swung at a pitch and struck the bottom portion of the softball with the bat. The contact between the bat and ball resulted in a high foul ball outside the third baseline. The path of the ball after it was hit revealed Borkowski swung too early to hit the pitch into the playing field. Up to the point of the bat’s contact with the pitch, nothing occurred out of the ordinary to support a claim of recklessness. However, Borkowski’s actions that followed during the split second after he struck the ball were far from normal. In his experience as a player and coach, Serváis had never seen or even heard of a first baseman being hit by a bat released from the hands of a right-handed hitter who had hit the pitched ball to the left side of the third baseline. Moreover, Serváis attempted to duplicate such an occurrence without success, which led him to the conclusion that Borkowski must have deliberately released the bat in a very abnormal, contorted act of recklessness.
Importantly, the affidavit of Serváis supports a reasonable conclusion that Borkow-ski did not continue to swing the bat in a normal manner after he hit the ball. The rare abnormality of the bat’s flight pattern *81 after the ball was struck at least supports an inference of recklessness. An act performed by a participant in a sport that produces a radically different result from the normal and expected result of the act, even when performed negligently, gives rise to an inference that the result was purposeful.
A party resisting summary judgment is entitled to “every legitimate inference that can reasonably be deduced from the evidence.” Cent. Nat’l Ins. Co. v. Ins. Co. of N. Am., 522 N.W.2d 39, 42 (Iowa 1994). Here, the Serváis affidavit gives rise to a reasonable inference of recklessness. Considering all the facts presented in the summary judgment proceedings, a jury could conclude BorkowsM, knowing he had swung ahead of the pitch and that his body was out of position to make solid contact with the ball, continued his swing in a very unorthodox manner and released the bat in momentary frustration and anger. This inference is sufficient to support a jury question on recklessness. See Leonard, 601 N.W.2d at 80 (“[I]n order to prove recklessness as the basis for a duty, a plaintiff must show that the actor has intentionally done an act of an unreasonable character in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it and so great as to make it highly probable that harm would follow.”); accord Restatement (Second) § 500, at 587.
IV. Conclusion.
We conclude the district court erred in granting summary judgment. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED FOR TRIAL.
A1 justices concur except Wiggins, J., who concurs specially, and Appel, J., who concurs specially with Wiggins, J., joining divisions I and 111(A) and Hecht, J., joining in its entirety.

. The Restatement (Third) provides the general duty to exercise reasonable care may be modified or displaced “when an articulated countervailing principle or policy” justifies a special rule of liability. Restatement (Third) § 7, at 77. Although we adopted the contact-sports exception prior to Thompson, our decision in Leonard fits within a special rule for liability in the sports context found in the Restatement (Third) of Torts. See Leonard, 601 N.W.2d at 79-80 (striking a balance between competing interests, including the need to preserve "vigorous and active participation in contact sports without fear of liability for merely negligent bodily contact,” and the need to diminish public-policy concerns over the flood of litigation that would result under a negligence standard against the interest in protecting those who participate in those events). Thus, Leonard followed the Tkomp-son framework, and our adoption of the Restatement (Third) in Thompson did not undermine our prior adoption of the contact-sports exception in Leonard. In fact, the Restatement (Third) specifically recognizes that the contact-sports exception is an example of a recognized exception to the reasonable-care standard under its approach. Restatement (Third) § 7 cmt. a, at 78. Importantly, the Restatement (Third) does not focus on how courts should identify occasions when a different duty replaces the reasonable-care standard. Instead, it expresses the notion that a reasonable-care duty applies in each case unless a special duty, like the contact-sports exception, is specifically recognized. Id. § 7, at 77. The Restatement (Third) primarily sought to eliminate specific arguments that no duty of care exists under a particular set of circumstances. Id. § 7 cmt. a, at 77.

. The assumption-o£-the-risk underpinning of the contact-sports exception does not mean that a participant in a contact sport is barred from recovery due to his own contributory negligence. The assumption-of-the-risk doctrine, in that respect, has been abolished in Iowa. See Coker v. Abell-Howe Co., 491 N.W.2d 143, 148 (Iowa 1992). Rather, assumption of the risk in this context merely reflects the evolution of the policy basis for this modified duty rule. This rule does not bar plaintiffs in contact sports from recovery altogether, but instead recognizes that the various risks associated with contact sports justify a modified duty of care.

. The American Law Institute published a revised definition of “recklessness" in its most current Restatement. Restatement (Third) § 2, at 16-17. The drafters acknowledge that the current standard of recklessness is "somewhat more restrictive" than the Restatement (Second) standard. Id. cmt. c, at 19. Primarily, the standard provided in the Restatement (Third) differs from the Restatement (Second) by focusing on the obviousness of *78 the danger presented by the conduct. Id. We do not address the issue of adopting the substance of the Restatement (Third) standard for recklessness in this case.

. We recognize our obligation to construe the law in resolving legal issues presented on appeal independent of any construction advocated by the parties. The arguments of the parties do not constrain us in our obligation to search for and apply controlling law to resolve legal issues. See Rants v. Vilsack, 684 N.W.2d 193, 211-12 (Iowa 2004) (applying controlling law to reach a result not advocated by either party). However, in the absence of the most cogent circumstances, we do not create issues or unnecessarily overturn existing law sua sponte when the parties have not advocated for such a change. See, e.g., Pierce v. Pierce, 287 N.W.2d 879, 882 (Iowa 1980) (recognizing subject matter jurisdiction issues will be considered sua sponte because an appeal pursuant to improper jurisdiction is contrary to governing rules of procedure); Sisson v. Janssen, 244 Iowa 123, 130-31, 56 N.W.2d 30, 34 (1952) (noting the issue of “unclean hands” may be raised sua sponte by the court, even though no party advocates it due to the strong public interest in equitable proceedings). See also Varnum v. Brien, 763 N.W.2d 862, 884 n. 9 (Iowa 2009) (questioning sua sponte the viability of the threshold test used to dispose of equal protection claims, but refusing to abandon the test until parties in a future case could present the full arguments since the plaintiffs nevertheless satisfied the threshold test and suffered no prejudice by its application). In this case, we are restrained to apply the controlling law as advocated by the parties, and we do not consider or forecast whether or not that controlling law should be abandoned or changed in favor of a duty of reasonable care or modified by a standard staking out some middle ground.

. The contact-sports exception is not an affirmative defense to a claim for negligence so as to require the defendant to plead and prove the defense. It is a doctrine that limits liability by modifying the standard of care. Leonard, 601 N.W.2d at 81. Once an activity is determined to be a contact sport, a plaintiff must plead and prove a claim for recklessness. See 57A Am.Jur.2d Negligence § 274, at 339 (2004) (“Once an actor's conduct is determined to be reckless, his or her liability for harm resulting from that behavior is determined by the same rules that determine the liability of a negligent actor; to state a claim upon which relief may be granted, the plaintiff must still prove facts demonstrating the existence of the basic elements of duty, breach, proximate cause, and damages.”).