# IN THE COURT OF APPEALS OF IOWA

No. 23-2122
Filed October 30, 2024

**ANNA J. STONER, Individually and as Parent and Next Friend of L.T.,**
Plaintiff-Appellant,

**vs.**

**KASSI TAFT and TYLER TAFT,**
Defendant-Appellees.
_____

Appeal from the Iowa District Court for Monroe County, Greg Milani, Judge.


A plaintiff appeals the judgment entered for the defendants on a personal injury claim. **AFFIRMED.**


Maria L. Hartman of Hartman Law Firm, PLC, Reinbeck, and James K. Weston, II of Tom Riley Law Firm, P.L.C., Iowa City, for appellants.

Michael Carmoney and Lydia Larson of Carmoney Law Firm, PLLC, Des Moines, for appellees.


Heard by Schumacher, P.J., Chicchelly, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CHICCHELLY, Judge.**

Anna Stoner appeals the judgment entered for Kassi and Tyler Taft on her premises liability claim. She contends the district court erred by finding the provisions of Iowa Code section 673.2 (2020), concerning the liability of owners of domesticated animals, provides a negligence standard rather than an affirmative defense that the Tafts waived by failing to plead. She also contends that the district court erred by determining her claim concerns domesticated animal activity that falls under chapter 673. Finally, she contends the district court erred by instructing the jury on section 673.2.

We agree that the Tafts were not required to plead section 673.2 as an affirmative defense and the activity during which Stoner was injured falls under the definition of domesticated animal activity under chapter 673. Because the district court did not err in instructing the jury on section 673.2, we affirm.

**I. Background Facts and Proceedings.**

In August 2020, the Tafts lived on an acreage in Albia where they kept two ponies in a fenced-in pasture. The Tafts were selling the ponies and needed to catch them for delivery to a buyer, but the ponies were "skittish" and difficult to catch. The Tafts recruited friends to help with the task. They sought help from Jamie, a mutual friend. On the day the ponies were being delivered to the buyer, Stoner stopped by Jamie's house. Knowing Stoner was experienced with horses, Jamie asked Stoner to help. Although reluctant, Stoner agreed.

The group spent about thirty minutes trying to catch the Tafts' ponies. Eventually, Stoner got a rope around one pony's neck. As she was leading the pony to secure it to a post, some of the slack from the rope fell to the ground and

wrapped around Stoner's ankle. The pony took off in a run, dragging Stoner behind while the rope pulled increasingly tighter on Stoner's ankle. By the time that Kassi Taft caught the pony and disentangled Stoner from the rope, Stoner's foot was dislocated. Stoner described the incident as causing "the worst pain I have ever felt." Stoner had surgery to repair the damage to her leg and developed an infection while healing, requiring a second surgery. As a result, Stoner did not return to work until January 2021.

Stoner sued the Tafts, alleging they negligently maintained their premises in a condition that created unreasonable risk of injury and failed to warn her of it. The matter proceeded to a jury trial. During the trial, the parties disagreed on whether Iowa Code section 673.2 provides the Tafts, as owners of domesticated animals, immunity from liability for Stoner's injuries and, if so, whether the Tafts had to plead that immunity as an affirmative defense.

The trial court determined that section 673.2 is not an affirmative defense but a negligence standard. It instructed the jury that liability for injuries caused by a risk inherent to domesticated animal activity is limited to injuries resulting from reckless acts or failure to notify participants of latent conditions. The jury returned a verdict finding the Tafts were not at fault for Stoner's injuries. Stoner appeals.

**II. Review.**

Because this matter was tried as a law action, our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. We are bound by the district court's findings of fact if they are supported by substantial evidence. *See* Iowa R. App. P. 6.904(3)(a).

**III. Discussion.**

Stoner challenges the trial court's interpretation of Iowa Code section 673.2, which provides owners of domesticated animals immunity from liability for "damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity."  Section 673.1(11) defines "inherent risks of a domesticated animal activity" as "a danger or condition which is an integral part of a domesticated animal activity," which includes:

> a. The propensity of a domesticated animal to behave in a manner that is reasonably foreseeable to result in damages to property, or injury or death to a person.
> b. Risks generally associated with an activity which may include injuries caused by bucking, biting, stumbling, rearing, trampling, scratching, pecking, falling, kicking, or butting.
> c. The unpredictable reaction by a domesticated animal to unfamiliar conditions, including, but not limited to, a sudden movement; loud noise; an unfamiliar environment; or the introduction of unfamiliar persons, animals, or objects.
> d. A collision by the domesticated animal with an object or animal.
> e. The failure of a participant to exercise reasonable care, take adequate precautions, or use adequate control when engaging in the activity, including failing to maintain reasonable control or failing to act in a manner consistent with the person's abilities.

Five types of conduct remove a domesticated animal owner from the immunity provided in section 673.2.  *See* Iowa Code § 673.2(1)–(5).  The parties agree that only two of the exceptions may apply.  One exception is for intentional or reckless acts.  *See id.* § 673.2(1).  The other exception is for failing to notify a person of "a dangerous latent condition on real property in which the defendant holds an interest, which is known or should have been known."  *Id.* § 673.2(3).

### A. Is section 673.2 an affirmative defense?

Stoner first contends the court erred by determining that section 673.2 is not an affirmative defense that the Tafts had to specially plead. *See* Iowa R. Civ. P. 1.419 (requiring a defense that "admits the facts of the adverse pleading but seeks to avoid their legal effect" to be specially pled). "An affirmative defense is one which rests on facts not necessary to support the plaintiff's case. Thus, any defense which would avoid liability although admitting the allegations of the petition is an affirmative defense." *Erickson v. Wright Welding Supply, Inc.*, 485 N.W.2d 82, 86 (Iowa 1992) (internal citations omitted).

In their answer, the Tafts denied the claims Stoner made in her petition. They also asserted five affirmative defenses but did not allege that they were not liable based on the provisions of section 673.2. But when the Tafts submitted proposed jury instructions one week before trial, they included two instructions addressing the liability of owners of domesticated animals. While cross-examining Stoner during trial, defense counsel asked without objection if "there are inherent risks in dealing with domestic animals." Stoner answered, "Yes."

On the second day of trial, the parties' discussed the applicability of section 673.2 with the court outside the jury's presence. The Tafts noted that Stoner was "obviously aware that [section 673.2] is a factor in this case" because her petition alleged that she "was not engaged in a domesticated animal activity" when she was injured. Stoner argued that section 673.2 provides an affirmative defense that the Tafts had to plead. Because the Tafts failed to raise the defense in their answer or include it in answering an interrogatory about the factual basis for their affirmative defenses, Stoner claimed they waived the defense at trial.

The district court rejected Stoner's argument that section 673.2 provides an affirmative defense, determining instead that it sets out a standard of care for the defendants' negligence. It noted that although the statute could render defendants immune from recovery for certain domesticated animal activities, the plaintiff must show "that certain duties were breached." If the plaintiff fails to show the defendants violated that standard of care, the plaintiff cannot recover damages.

The district court's ruling is supported by *Erickson*, in which the supreme court considered the provisions of Iowa Code section 613.18, which limit the strict liability for sellers of products who are not involved in the product's assembly, design, or manufacture. 485 N.W.2d at 86. The supreme court held that the limitation on liability provided in section 613.18 is not an affirmative defense but a modification of the elements the plaintiff must prove. *Id.*

> We do not believe the immunity from suit or limitation of liability provided by section 613.18 is an affirmative defense that must be raised in the pleadings and proven by the defendant. The plaintiff has the burden of proving the elements of strict liability. Before the adoption of section 613.18, the plaintiff need only show the defendant was a seller. Since the adoption of the statute, a plaintiff must establish the seller is not in the newly defined class of sellers immune from suit or whose liability is precluded by the statute. The plaintiff must prove the elements of its case, including proof that the seller is not immune from suit or is subject to liability.

*Id.*; *accord Ziel v. Energy Panel Structures, Inc.*, No. 19-0508, 2020 WL 4498064, at *7 (Iowa Ct. App. Aug. 5, 2020) (relying on *Erickson* to conclude that a "contractual provision waiving liability for negligence and limiting an injured party's remedies is not an affirmative defense" the defendant had to plead in its answer); *Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352, 355 (Iowa 1994) (determining that the defendant's civil immunity for exercising a First Amendment

right to petition for governmental action "is not an affirmative defense," but rather an issue for "the plaintiffs to raise and negate"). Likewise, Stoner must prove the elements of premises liability but must also show she was not participating in domesticated animal activity at the time of her injury. Stoner's petition claimed as much. If Stoner was participating in domesticated animal activity, section 673.2 requires that she prove the Tafts acted intentionally or recklessly, *see* Iowa Code § 673.2(1), or failed to notify her of a dangerous latent condition on their property, *see id.* § 673.2(3), to recover damages for her injury.

The exception in section 673.2(1), holding owners of domesticated animals liable for intentional or reckless acts, is analogous to the contact sports exception to negligence claims, which the supreme court addressed in *Feld v. Borkowski*, 790 N.W.2d 72, 75–77 (Iowa 2010).

> As a general rule, our law recognizes that every person owes a duty to exercise reasonable care to avoid causing injuries to others. A breach of this duty will subject the actor to liability if the injury caused by the actor's conduct resulted from the risks that made the actor's conduct negligent. In most all cases involving physical harm, we have adopted the view that a duty of reasonable care exists, and it is for the fact finder to consider the specific facts and circumstances to determine if the actor breached the duty.
>
> While the duty to exercise reasonable care accompanies each individual in most all activities of life, some activities or circumstances have been excepted from the reasonable-care duty in favor of the imposition of a less stringent duty of care for participants in the activity to protect others from injury. One such activity that has been identified as an exception is contact sports. . . . In finding the game of paintball to be a contact sport . . . , we imposed a duty for participants in the sport to merely refrain from reckless or intentional conduct. This standard recognizes that known risks associated with a contact sport are assumed by participants in the sport, and it is inapposite to the competitiveness of contact sports to impose a duty on participants to protect coparticipants from such known and accepted risks through the exercise of reasonable care. The standard also recognizes that athletes who step onto the playing field to compete are not completely free from legal responsibility for their

conduct that creates a risk of injury, but are restrained under a substantially lower duty of care.

*Feld*, 790 N.W.2d at 75–77 (cleaned up). The supreme court noted that the contact-sports exception "is not an affirmative defense to a claim for negligence so as to require the defendant to plead and prove the defense," but "a doctrine that limits liability by modifying the standard of care." *Id.* at 80 n.5 (citation omitted). "Once an activity is determined to be a contact sport, a plaintiff must plead and prove a claim for recklessness." *Id.* (citation omitted). Likewise, if Stoner was injured while engaged in domesticated animal activity, she must show the Tafts breached the standard of care set out in section 673.2(1) or (3) to recover.

**B. Does section 673.2 apply to the facts?**

Stoner next contends that the Tafts are not entitled to immunity under section 673.2 because they were not engaged in domesticated animal activity as defined in chapter 673. The definition of "domesticated animal activity" under chapter 673 includes conduct like "driving a domesticated animal," Iowa Code § 673.1(3)(a); "[p]articipating or assisting a participant in a domesticated animal event," *id.* § 673.1(3)(e); and "[m]anaging or assisting in managing a domesticated animal in a domesticated animal event.," *id.* § 673.1(3)(f). A "domesticated animal event" is "an event in which a domesticated animal activity occurs," including "[a]n event involving driving, pulling, or cutting." Iowa Code § 673.1(5)(h).

Stoner claims the activity of "catching ponies" does not fall under the statutory definition of domesticated animal activity. She argues that driving is limited to situations in which an animal is pulling a cart or buggy that one is "driving." *See Hynes v. Clay Cnty. Fair Ass'n*, 672 N.W.2d 764, 766–67 (Iowa

2003) (addressing immunity under section 673.2 for injuries the plaintiff suffered while at a fair to participate in events involving a horse and buggy that she owned). The district court disagreed, ruling the words "driving" and "catching" are interchangeable.

"Our starting point in statutory interpretation is to determine if the language has a plain and clear meaning within the context of the circumstances presented by the dispute." *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 50 (Iowa 2024), *as amended* (May 9, 2024) (cleaned up). If so, we do not search for meaning beyond the statute's express terms. *Id.* "Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used." *State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006) (citation omitted).

Turning to the definition of "drive," the ordinary and common meaning is not as limited as Stoner suggests. Merriam-Webster's definition of "drive" includes "to frighten or prod (game, cattle, etc.) into moving in a desired direction. *Drive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/drive (last visited September 24, 2024). Black's Law Dictionary defines "driving" as "[t]he act of directing the course of something, such as an automobile or a herd of animals." *Driving*, *Black's Law Dictionary* (12th ed. 2024). Its definition of "drove" includes: "A group of animals driven in a herd." *Drove*, *Black's Law Dictionary* (12th ed. 2024). The trial judge understood from experience raising domesticated animals

that the common meaning of "driving" in this context includes catching animals.[1]

Although domesticated animal activity also includes activities involving domesticated animals being "driven" while pulling a buggy, the use of the word "driving" is not limited to activity involving a vehicle. *Cf.* Iowa Code § 673.1(3)(b) (defining domesticated animal activity as "[r]iding as a passenger on a vehicle powered by a domesticated animal"); *id.* § 673.1(5)(h) (grouping "driving" and "pulling" together in one the same definition of "domesticated animal activity").

Substantial evidence shows that Stoner participated in a domesticated animal activity by driving (or herding) an animal, participating or assisting a participant in an event involving driving, or managing or helping manage a domesticated animal in an event involving driving. Without a showing that the activity falls under one of the exceptions in section 673.2, the Tafts are not liable.

**C. Did the court err in instructing the jury on statutory immunity?**

Finally, Stoner challenges the jury instruction on statutory immunity. That instruction stated:

> The owner of a domesticated animal is only liable for damages or injury suffered by a participant resulting from the inherent risks of a domesticated animal activity, to the extent the claim for damages or injury is caused by any of the following:
> 1. An act committed recklessly which causes damages or injury; or
> 2. The failure to notify a participant of a dangerous latent condition which is known or should have been known.
> "Reckless" means intentionally doing an unreasonable act in disregard of a risk that is known or so obvious that it should have been known making it highly probable that harm would follow.

---

[1] The judge stated, "I am a Southern Iowa kid. I've raised cattle all my life. Driving is catching, and catching is driving. If we talk about catching cattle, we're driving them. If we talk about driving cows, we're catching them."

Stoner contends the instruction is erroneous for the reasons outlined above: the Tafts' failure to plead immunity as an affirmative defense and the act of catching a pony falling outside the activity protected by section 673.2.  Having rejected those claims, we find no error in instructing the jury on statutory immunity.  *See Mowery v. City of Carter Lake*, 961 N.W.2d 739, 751 (Iowa Ct. App. 2021) ("Parties are entitled to have their legal theories submitted to the jury if they are supported by the pleadings and substantial evidence in the record." (citation omitted)).

**AFFIRMED.**