# IN THE COURT OF APPEALS OF IOWA

No. 24-1939
Filed December 3, 2025

**JANEY SHAFER,**
        Plaintiff-Appellant,

**vs.**

**FRANK SANTANA,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Madison County, Terry Rickers, Judge.

        A plaintiff appeals the district court's summary judgment order finding the defendant immune from liability under Iowa Code chapter 673.  **REVERSED AND REMANDED.**

        Matthew J. Hemphill (argued) and Aiden R. Ruble of Bergkamp, Hemphill & McClure, P.C., Adel, and Jason Springer of Springer Law Firm, PLLC, Madrid, for appellant.

        Nicholas J. Huffmon (argued) and Brian T. Fairfield of Brooks Law Firm, P.C., Rock Island, Illinois, for appellee.

        Heard at oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**PER CURIAM.**

Even the most familiar animals can behave in unpredictable ways. Recognizing this fact, our legislature has chosen to immunize persons who work with domesticated animals from certain liabilities those animals may cause. *See* Iowa Code § 673.2. The question in this appeal is whether that immunity applies to the negligence claim of Janey Shafer, a farm visitor who was injured when a stationary horse team startled into motion and pulled an antique mower over her body. Like the district court, we find that Shafer's injury occurred while she was participating in a domesticated animal activity, bringing this case within the scope of chapter 673. But because a fact question remains as to whether Shafer's injury was the product of recklessness, we reverse the grant of summary judgment and remand for further proceedings.

## I.      Background Facts and Proceedings[1]

Frank Santana is a life-long horse enthusiast who trains, rides, and drives horses on his Madison County farm. In July 2021, he began giving Janey Shafter equestrian lessons. During one of Shafer's visits to his farm, Santana asked her to film him operating a horse-drawn sickle mower. Shafer agreed. She followed Santana on a four-wheeler as he drove a two-horse team to pull the antique mower. Occasionally, Santana stopped to clean clumps of grass from the mower's sickle bar—a long, toothed arm extending outward from one side of the mower's frame.

---

[1] Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to the plaintiff. *See Brodie v. Foxhoven*, 21 N.W.3d 380, 383 n.2 (Iowa 2025).

The mowing took about forty-five minutes. When Santana was finished, he motioned for Shafer to hold the horses while he raised the sickle bar.[2] At Santana's direction, Shafer grabbed a rope halter and stood beside the horse that was on the opposite side of the sickle bar. Shafer testified at her deposition that while she was holding the rope, Santana threw the sickle bar up, but "it fell down and was bouncing," which she thinks spooked the horses. As the horses charged towards her, Shafer dropped the rope and fell to the ground. The mower's solid-steel wheel rolled over her body. Damage to her spinal cord left her paralyzed below the waist.

Shafer sued, alleging her injuries were caused by Santana's negligence. Among other defenses, Santana claimed immunity under the Iowa Domesticated Animal Activities Act. *See* Iowa Code § 673.2 (2023). The district court found Shafer's claims fell within the scope of the statute and granted summary judgment to Santana. Shafer appeals.

## II. Standard of Review

We review summary judgment rulings for correction of errors at law. *Baker v. Shields*, 767 N.W.2d 404, 406 (Iowa 2009). A grant of summary judgment must be affirmed where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *see also Brodie v. Foxhoven*, 21 N.W.3d 380, 389 (Iowa 2025). "Where the only controversy concerns the legal consequences flowing from undisputed facts, summary judgment is the proper remedy." *Vreeman v. Jansma*, 995

---

[2] The sickle bar on the mower could be raised and lowered on a hinge, allowing the machine to pass through narrow spaces. Shafer alleges that Santana had to raise the sickle bar to move the mower through a gate.

N.W.2d 305, 306 (Iowa Ct. App. 2023) (citation omitted).  But summary judgment is premature when there remain questions of fact that a reasonable jury could resolve in favor of the non-moving party.  *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015).  In deciding whether a genuine factual dispute exists, we view the evidence in the light most favorable to the nonmovant, granting every legitimate inference supported by the record.  *Id.*

### III.    Analysis

Under the Iowa Domesticated Animal Activities Act, an animal owner "is not liable for the damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity."[3]  Iowa Code § 673.2.  These risks "include injuries caused by bucking, biting, stumbling, rearing, [or] trampling," as well as injuries caused by the animal's "unpredictable reaction . . . to unfamiliar conditions," like sudden movement or loud noise.  *Id.* § 673.1(11).  The district court found that Shafer was participating in a domesticated animal activity at the time of her injury.  It also found that the statute's exception for reckless conduct did not apply.  *See id.* § 673.2(1).  Shafer challenges both findings, arguing that holding a stationary horse is not a qualifying activity and that the recklessness of Santana's conduct was a question of fact that should have been resolved at trial.

---

[3] The parties do not focus on whether Shafer was a "participant" or "spectator," likely because both terms hinge on the definition of "domesticated animal activity." *See* Iowa Code § 673.1(12) ("'Participant' means a person who engages in a domesticated animal activity, regardless of whether the person receives compensation."); *id.* § 673.1(13) ("'Spectator' means a person who is in the vicinity of a domesticated animal activity, but who is not a participant."); *see also Vreeman*, 995 N.W.2d at 307 (noting whether the plaintiff was a "'participant' hinges on the definition of 'domesticated animal activity'").

### A. "Domesticated Animal Activity"

Iowa Code section 673.1(3) makes fourteen categories of domesticated animal activity subject to immunity. As we have stressed, that list is exclusive. *See Vreeman*, 995 N.W.2d at 307 n.2, 308 (noting the absence of residual language in the definition of "domesticated animal activity" and declining to "write an activity into the definition" that the legislature declined to include). In moving for summary judgment, Santana argued that he was engaged in the covered activity of "[r]iding or driving a domesticated animal" under Iowa Code section 673.1(3)(a). The district court agreed, finding the undisputed facts established that Shafer was "driving" Santana's horse team when she was injured.[4]

Although the term "driving" is not defined by chapter 673, it has been interpreted by our court before. *See Stoner v. Taft*, No. 23-2122, 2024 WL 4615905, at *4–5 (Iowa Ct. App. Oct. 30, 2024). In *Stoner*, a plaintiff was injured while helping her friend round up ponies for delivery. *Id.* at *1. As she led one by a rope, it took off in a run, dragging the plaintiff behind. *Id.* The question was whether pony-catching was a domesticated animal activity under section 673.1(3)(a). *Id.* at *4. The plaintiff argued the words "driving a domesticated animal" should only apply when an animal is towing a cart or buggy.

---

[4] The district court did not address Santana's alternative argument that the covered activity of "[p]articipating or assisting a participant in a domesticated animal event"—which includes "[a]n event involving driving, pulling, or cutting"—also applied. Iowa Code § 673.1(3)(e), (5)(h) (defining "domesticated animal event"). On appeal, Santana again claims immunity under this provision. Although "we may affirm the district court ruling upon any ground raised in district court even if the ground is not one relied upon by the court," we choose to focus on the covered activity that the court addressed. *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994).

*Id.* We disagreed, noting the ordinary and common meaning of the word "driving" is "not limited to activity involving a vehicle" and includes moving an animal "in a desired direction." *Id.* at *5 (citation omitted).

Expanding on *Stoner*'s plain-language interpretation, the district court reasoned that "the act of 'driving' something necessarily includes starting and stopping." It therefore concluded that Shafer was driving Santana's horses by "holding the lead rope to help make sure they held still" while Santana worked on the mower. Shafer rejects that conclusion as a matter of law, arguing "the only time the horses were moving . . . was during the act of mowing" and "the mowing had stopped" at the time of her injury. Distinguishing horse-holding from pony-catching, Shafer contends that "standing at a stop" is a stationary activity not included in the verb "drive." We disagree.

Although we interpret statutes according to their text, we must not impose "crabbed interpretations on the legislature's words" or restrict them to their most literal definitions. *UE Loc. 893/IUP v. State*, 997 N.W.2d 1, 14 (Iowa 2023) (cleaned up). Our goal is to "read a statute as a whole and give it its plain and obvious meaning." *Kay-Decker v. Iowa State Bd. of Tax Rev.*, 857 N.W.2d 216, 223 (Iowa 2014) (cleaned up). In doing so, we may "look to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Id.* (citation omitted). Common definitions of the word "drive" include "directing the course" of an animal and moving it "in a desired direction." *Stoner*, 2024 WL 4615905, at *5 (citations omitted). Another dictionary defines the term to mean "direct[ing] the motions and course of (a draft animal)." *Drive*, Webster's Third New Int'l Dictionary 692 (unabr. ed. 2002). The focus of these

definitions is on direction, not propulsion. And directing motion sometimes involves restraint. Just as braking for a red light is part of what it means to drive a car, stopping a horse by its halter is within the meaning of "driving" that animal.

To find otherwise would lead to arbitrary results. Under Shafer's interpretation, immunity for the same inherent risks would depend on whether an animal was standing or advancing at the time of injury. We decline to cabin the legislature's words in a manner that conflicts with its broader purpose of limiting liability. *Cf. Snider v. Fort Madison Rodeo Corp.*, No. 00-2065, 2002 WL 570890, at *4 (Iowa Ct. App. Feb. 20, 2002) ("In order to meet the clear design of chapter 673, [a domesticated animal activity] must be seen in its entirety and its participants given protection from liability for injuries sustained . . . during the course of the [activity]."). Here, Santana and Shafer remained in the process of driving the horses when Shafer was injured. The district court did not err in finding that Shafer was participating in a domesticated animal activity.

## B. Recklessness

Our conclusion that Shafer was involved in a qualifying activity does not end the analysis. Among other exceptions, immunity under chapter 673 is unavailable where a plaintiff's injury is "caused by . . . [a]n act committed intentionally, recklessly, or while under the influence of an alcoholic beverage or other drug or a combination of such substances." Iowa Code § 673.2(2). Shafer invoked this carve-out at summary judgment, arguing a fact question exists as to whether Santana's conduct was reckless. The district court disagreed, reasoning that

"Santana's failure to secure his grip on the sickle bar may have been the result of carelessness" but did not amount to "conscious disregard for Shafer's safety."[5]

The term "recklessly" is not defined by section 673.2. However, recklessness is a familiar concept to our law, and we have looked to tort principles to flesh out the statutory standard. *See Snider*, 2002 WL 570890, at *2 (citing Restatement (Second) of Torts § 500 (A.L.I. 1965)). In *Snider*, we explained that recklessness exists when a defendant intentionally acts in disregard of a risk "so obvious from the facts that the actor knows or should reasonably foresee that harm will probably—that is, more likely than not—flow from the act." *Id.*; *see also Stoner*, 2024 WL 4615905, at *5 (approving a near-identical recklessness instruction). This is often a question for the jury. *See, e.g.*, *Feld*, 790 N.W.2d at 80–81 (Iowa 2010) (reversing summary judgment where a jury could reasonably infer that a baseball player intentionally released his bat mid-swing, striking the plaintiff).

To show recklessness in this case, Shafer points to the opinions of her retained expert, Everett Kenoyer, who has decades of experience working with draft horses and sickle mowers. Kenoyer opined that Santana "operated the mower and horse team in an unsafe and dangerous manner," including by

---

[5] The district court added that any claim based on reckless conduct must fail because Shafer's petition only alleged negligence. We disagree. Santana put recklessness at issue by invoking chapter 673 immunity, and Shafer squarely addressed the heightened standard in resistance to summary judgment. *See Feld v. Borkowski*, 790 N.W.2d 72, 80 & n.5 (Iowa 2010) (noting it was "not fatal to the [plaintiff's] lawsuit that he only asserted a claim for negligence in his petition rather than asserting a claim for both negligence and recklessness," especially where the plaintiff's "resistance to the motion for summary judgment placed the issue of recklessness squarely in play"). In any event, Iowa's notice-pleading standard "do[es] not require a petition to allege a specific legal theory." *Id.* (quoting *Rieff v. Evans*, 630 N.W.2d 278, 292 (Iowa 2001)).

instructing Shafer to hold the horses while standing in front of the mower.[6] According to Kenoyer, "[t]he horses should not have been held by anyone"— instead, Santana should have tied the horses' reigns or commanded them to stand still with a verbal cue. Kenoyer also explains that horse teams generally "operate by sound" and that dropping a heavy sickle bar would "spook the horses, especially when at a standstill."

"[E]xpert opinions may give rise to a reasonable inference of recklessness." *Penny v. City of Winterset*, 999 N.W.2d 650, 655 (Iowa 2023) (cleaned up); *accord Feld*, 790 N.W.2d at 81. Santana advanced no evidence—expert or otherwise— to rebut Kenoyer's claims. *See Nelson*, 867 N.W.2d at 6 (explaining the burden is on the party seeking summary judgment to show the nonexistence of a factual dispute). Based on Kenoyer's testimony, a reasonable jury could find that Santana acted in disregard to a known or obvious risk when he asked Shafer to hold the lead while standing in the path of the mower. In that position, a serious injury was not just foreseeable but highly probable in the event of sudden movement by the horses. *See Snider*, 2002 WL 570890, at *2. The district court's recklessness

---

[6] Although Kenoyer was deposed, Shafer primarily relies on opinions Kenoyer provided in his written report. We note that the report is neither sworn nor incorporated in a sworn affidavit. *See* Iowa R. Civ. P. 1.981(3) (stating summary judgment must be granted or denied based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits"). That said, Santana does not challenge the form of the report, and Kenoyer affirmed during his deposition that he intended to testify at trial regarding all of his written opinions. *See Kindig v. Newman*, 966 N.W.2d 310, 322 (Iowa Ct. App. 2021) ("While evidence need not be in an admissible form at the summary judgment stage, its *content* must be admissible."). Under these circumstances, we consider Kenoyer's written opinions part of the summary judgment record.

analysis overlooked this obvious risk, focusing instead on Santana's grip on the sickle bar.  We conclude a triable issue remains.

## IV.     Conclusion

Shafer was participating in a domesticated animal activity at the time of her injury.  *See* Iowa Code § 673.1(3)(a).  But when viewing the record in the light most favorable to Shafer, we find a lingering question of fact as to whether that injury was caused by Santana's recklessness.  We therefore reverse the district court's order granting summary judgment and remand for further proceedings.

**REVERSED AND REMANDED.**

Tabor, C.J., and Sandy, J. concur; Badding, J., concurs in part and dissents in part.

**BADDING, Judge** (concurring in part and dissenting in part).

I agree that Janey Shafer's injury occurred while she was participating in the activity of "driving a domesticated animal," bringing this case within the scope of chapter 673 immunity. But I depart from my colleagues' conclusion that a genuine issue of fact remains. "Recklessness is a difficult standard to meet in Iowa," *Penny v. City of Winterset*, 999 N.W.2d 650, 653 (Iowa 2023) (cleaned up), and Shafer's allegations fall short. Because this is a case of negligence at most, I would affirm the district court's grant of summary judgment.

Shafer was injured by a chain of events unforeseen by either party. Something caused the sickle bar to fall, which caused Santana's horses to startle, which caused Shafer to stumble as the mower advanced towards her. The record is hazy on where Shafer was standing and whether Santana purposefully positioned her there.[7] Nor do we know how the sickle bar went from upright to freefall.[8] This evidence is too thin to find that Santana's request carried an "obvious" risk of "highly probable" injury. *Id.* at 655. By all appearances, both parties felt comfortable with the manner in which Shafer was holding the team. Indeed, Shafer testified that she lent the same help without incident earlier in the afternoon. *See Schumacher v. Schumacher*, 676 N.W.2d 685, 692 (Minn. Ct. App. 2004) (finding no genuine question of recklessness under Iowa Code section

---

[7] Shafer testified that Santana motioned for her, "so I walked up and he told me to hold the horses." She then testified that she was "off to the side" and "on the left" of the horses.

[8] Shafer testified that Santana "threw it up and it fell down." But she also suggested in an interrogatory answer that a "broken latch" caused the bar to fall.

673.2 where "[t]here was no evidence that [a] gelding had ever kicked anyone before or had a tendency to be a 'kicky' horse").

As for Shafer's expert, our court discussed similar evidence in *Snider v. Fort Madison Rodeo Corp.*, No. 00-2065, 2002 WL 570890 (Iowa Ct. App. Feb. 20, 2002). There, an equestrian expert attested that a runaway pony would not have injured the plaintiff if it had been properly restrained by a lead rope. *See Snider*, 2002 WL 570890, at *2. But the expert "did not attest to the converse, that is, without a lead it was highly probable the pony would bolt and cause harm." *Id.* Thus, there was no genuine question of recklessness, and summary judgment was proper. *Id.* at *3 ("[W]hile there may be a dispute of facts, we believe this is only a dispute as to whether the conduct was reasonable, or constituted negligence.").

Like the expert in *Snider*, Kenoyer offered no opinion as to whether the risk of Shafer holding the team was "so obvious that [Santana] must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Penny*, 999 N.W.2d at 655 (citation omitted). At most, his assertions that Santana could have better trained the horses, better maintained the mower, more safely positioned Shafer, or avoided her involvement altogether suggest that Santana failed to exercise reasonable care. That may be enough to raise an inference of negligence. But recklessness requires "something more." *Id.* at 653 (citation omitted).

A jury might reach the same conclusion after trial. But by then, Santana will have already lost part of the protection that chapter 673 provides. *Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015) (explaining "a key purpose" of statutory immunity "is to avoid costly litigation, and that legislative goal is thwarted when

claims subject to immunity proceed to trial"). Liability for injuries caused by the inherent risks of domesticated animal activities is the exception, not the rule. Because this is not an exceptional case meeting the high bar for recklessness, I would affirm the district court's order granting summary judgment.