# In the Iowa Supreme Court

No. 23–1788

Submitted November 13, 2025—Filed January 23, 2026

**Jacob M. Rose,** individually and as executor of the **Estate of Jack F. Rose,** and **Jeremy P. Rose,** individually,

Appellants,

vs.

**Oakland Healthcare Management, LLC,** d/b/a **Oakland Manor,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Amy Zacharias, judge.

The plaintiffs seek further review of a decision of the court of appeals affirming the dismissal of wrongful-death claims against defendant nursing facility. **Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Peter Johnson (argued) and Jon H. Johnson of Johnson Law, P.L.C., Sidney, for appellants.

Jeff W. Wright (argued) and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City, for appellee.

**McDonald, Justice.**

Cognizant of the potential liability arising out of the COVID-19 pandemic, the general assembly passed the "COVID-19 Response and Back-to-Business Limited Liability Act." 2020 Iowa Acts ch. 1070, §§ 3–10 (codified at Iowa Code chapter 686D (2021)). Among other things, the Act provides that, with respect to COVID-19-related injuries or death, "[a] health care provider shall not be liable for civil damages for causing or contributing, directly or indirectly, to the death or injury of an individual as a result of the health care provider's acts or omissions while providing or arranging health care." Iowa Code § 686D.6(1) (2022). The Act contains an exception: it does not relieve a health care provider for liability "for any act or omission which constitutes recklessness or willful misconduct." *Id.* § 686D.6(2). The plaintiffs in this case sued a health care provider for wrongful death, alleging the health care provider's reckless and willful failure to comply with certain federally recommended practices related to COVID-19 prevention resulted in the death of a resident in the provider's facility. The district court dismissed the suit on the defendant's motion for summary judgment, holding the plaintiffs failed to establish reckless or willful misconduct as a matter of law. The plaintiffs challenge that decision in this appeal.

I.

Jack Rose became a resident at Oakland Manor, a Medicaid-participating skilled nursing facility, in February 2019. Approximately one year later, in March 2020, federal and state authorities declared a public health emergency in response to the COVID-19 pandemic. In June of 2020, Rose was removed from the facility and hospitalized for a medical condition (the record is not clear as to the condition). On June 24, Rose was released from the hospital and returned to Oakland Manor. Oakland Manor placed Rose in precautionary isolation for

fourteen days in accordance with public health guidance to prevent the spread of COVID-19. Rose tested negative for COVID-19 on July 7 and 10. On July 10 and 13, Rose had two off-site medical appointments. The off-site medical appointments caused the facility to place Rose in precautionary isolation for another fourteen-day period. The second period of precautionary isolation was cut short when Rose was hospitalized for a suspected stroke on July 23. He tested positive for COVID-19 on the day he was admitted to the hospital. Rose died at the hospital on August 1. The death certificate listed Rose's immediate cause of death as COVID-19 infection due to acute hypoxic respiratory failure and bacterial pneumonia. The death certificate listed other significant medical conditions, including bacteremia, lactic acidosis, obesity, and diabetes.

In August and September of 2020, the Iowa Department of Inspection and Appeals conducted a COVID-19 Focused Infection Control Survey at Oakland Manor and an investigation of certain complaints related to Oakland Manor's response to COVID-19. Based on that survey and investigation, the Centers for Medicare and Medicaid Services (CMS) issued a Statement of Deficiencies to Oakland Manor in September, which we refer to as the CMS Report. The CMS Report identified certain inadequacies in Oakland Manor's practices related to a variety of things, such as recordkeeping, confidentiality of private information, and COVID-19 prevention. With respect to the last item, the CMS Report identified deficiencies such as improper sanitization of the sit-to-stand lift, the failure to complete hand hygiene, the failure to wear complete personal protective equipment (PPE), and the failure to completely seal an isolation area. The CMS Report noted that thirty of the thirty-one residents at the facility had tested positive for COVID-19 during the course of the pandemic. The CMS Report "identified that the facility was not in compliance with CMS and Centers for

Disease Control and Prevention ('CDC') recommended practices to prepare for COVID-19."

At some point later, the record is not clear exactly when, local news reported about the CMS Report and the issues at Oakland Manor. Jack's sons, Jacob and Jeremy (the Roses), learned about the report and the shortcomings at Oakland Manor from the news. They retained counsel and brought this suit individually and on behalf of the estate of Jack Rose. They asserted claims for (1) wrongful death, (2) breach of contract, (3) dependent adult abuse, (4) loss of consortium, and (5) punitive damages.

Oakland Manor asserted the health care provider immunity as an affirmative defense pursuant to Iowa Code section 686D.6. Later, Oakland Manor moved for summary judgment, arguing (1) that the alleged deficiencies identified in the CMS Report did not, as a matter of law, rise to the level of reckless or willful misconduct required to overcome the statutory immunity and (2) that the plaintiffs could not establish causation as a matter of law. The parties agreed that the statutory immunity applied to all of the plaintiffs' claims.

The plaintiffs resisted the summary judgment motion, but the evidence in support of the resistance was sparse. They did not put into the record any affidavits or deposition testimony from any employee or resident of the facility during the time Rose was a resident there. They did not put into the record any affidavits or deposition testimony from any of the persons who conducted the survey or investigation. They did not put into the record any affidavits or deposition testimony from any of the persons who prepared the CMS Report. The Roses had no personal knowledge of what occurred in the facility because they never visited Jack in the facility in the one and a half years he was a resident there despite living nearby. The only evidence the plaintiffs put in the record in

support of their resistance to the motion for summary judgment was the CMS Report[1] and their expert witness disclosure. The expert witness disclosure identified a registered nurse, Jaylin Mincer, as the plaintiffs' expert witness and provided a summary of her expected testimony. Mincer's expected opinion testimony, as set forth in the disclosure, was based on reading the death certificate and the CMS Report. Based on reading those two documents, it was her opinion "that the death of Jack F. Rose [wa]s due to the negligent care and wanton violation of Federal, State, and facility regulations regarding the prevention of Covid-19." She explained that "[t]he report also showed that the Oakland Manor failed to follow property infection control guidelines to prevent the spread of infection (Covid-19) such as failure to follow isolation guidelines, improper and incomplete PPE use (masks, gloves, Disinfectant), which was the cause of contracting Covid-19 and the death of Jack M. Rose."

The district court granted Oakland Manor's motion for summary judgment and dismissed the case. The district court explained that the statutory immunity provided that a health care provider could not be liable for civil damages while providing or arranging care. *See* Iowa Code § 686D.6(1). It further explained that the immunity included "[a]cts or omissions undertaken by a health care provider relating to use or nonuse of personal protective equipment." (Quoting *id.* § 686D.6(1)(*c*)(6).) The district court correctly held that the statute allowed liability upon a showing of recklessness or willful misconduct, but it held that the summary judgment record, even when viewed in the light most favorable to the plaintiffs, did not establish reckless or willful misconduct. It showed the

---

[1]The parties dispute whether the CMS Report would have been admissible at trial, but we need not resolve that dispute to resolve this appeal. For the purposes of this appeal, we assume that it would have been.

failure to comply with CMS regulations, which might amount to negligence per se, at most.

A divided panel on the court of appeals affirmed the dismissal. The court of appeals held that Oakland Manor exhibited "some failures" in its response to COVID-19 but the evidence did not show conduct that rose to the level of recklessness. The court of appeals also held that, even if the plaintiffs had created a triable issue of fact with respect to recklessness, the Roses' claims failed as a matter of law due to the lack of any admissible evidence regarding causation. The court of appeals reasoned that Mincer was not qualified to opine on the transmission of infectious diseases, as would be required to establish the chain of causation between Oakland Manor's conduct and Jack's death. A dissenting judge would have allowed the Roses' claims to proceed to trial. We granted the Roses' application for further review.

## II.

We review summary judgment rulings for correction of errors at law. *Kostoglanis v. Yates*, 956 N.W.2d 157, 158 (Iowa 2021). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Id.* at 158–59 (quoting *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014)). When a motion for summary judgment is made and properly supported, the opposing party may not rest upon the mere allegations or denials in the pleadings. Iowa R. Civ. P. 1.981(5); *see also Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 299 (Iowa 1996). "Instead, the resisting party must set forth specific material facts, supported by competent evidence, establishing the existence of a genuine issue for trial." *Rottinghaus v. Lincoln Sav. Bank* (*In re Est. of Franken*), 944 N.W.2d 853, 858 (Iowa 2020). "A fact is material if it will affect the outcome of

the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins.*, 490 N.W.2d 55, 57 (Iowa 1992). It is well established that "[s]peculation is not sufficient to generate a genuine issue of fact." *Nelson v. Lindaman*, 867 N.W.2d 1, 7 (Iowa 2015) (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005)).

### III.

As discussed above, the general assembly shielded health care providers from civil liability for COVID-19-related injury or death "as a result of the health care provider's acts or omissions while providing or arranging health care." Iowa Code § 686D.6(1). This includes, among other things, the "screening, assessing, diagnosing, caring for, or treating individuals with a suspected or confirmed case of COVID-19" and for "[a]cts or omissions . . . relating to use or nonuse of personal protective equipment." *Id.* § 686D.6(1)(*a*), (*c*)(6). The statute creates a limited exception and allows civil liability where a health care provider recklessly or willfully caused injury or death. *Id.* § 686D.6(2). The parties in this case do not dispute that Oakland Manor is a health care provider and that the statute applies to the claims asserted here. They only contest whether the plaintiffs resisted the defendants' motion for summary judgment with sufficient evidence to create a triable issue of fact on whether Oakland Manor acted recklessly.

We have never considered recklessness in the context of section 686D.6, but the standard for recklessness is well-established in our caselaw. It "means something more than 'the mere unreasonable risk of harm in ordinary negligence.'" *Martinez v. State*, 986 N.W.2d 121, 125 (Iowa 2023) (quoting *Bell v. Cmty. Ambulance Serv. Agency*, 579 N.W.2d 330, 335 (Iowa 1998)); *see also*

*McCornack v. Pickerell*, 294 N.W. 746, 747–48 (Iowa 1940) ("Recklessness is a different term than negligence and includes more."). To establish recklessness, a plaintiff must prove the actor intentionally performed an act of an unreasonable character, that the intentional act was in disregard of a known risk or risk so obvious that the actor should have known of it, and that the intentional act made it highly probable that harm would follow. *Penny v. City of Winterset*, 999 N.W.2d 650, 653 (Iowa 2023); *Martinez*, 986 N.W.2d at 125. In short, Iowa law imposes a high bar to establish recklessness; it is a difficult standard to meet. *Penny*, 999 N.W.2d at 653.

An example of recklessness in relation to the pandemic is the case of *State ex rel. Clinton No. 1, Inc. v. Baker*, 708 S.W.3d 474 (Mo. 2024) (en banc). In that case, a woman contracted for a private room with a health care and rehabilitation center. *Id.* at 476. Despite the woman's contract for a private room, the center placed a COVID-19-infected roommate in the woman's room thereby exposing the woman to COVID-19. *Id.* "As a result of the roommate placement, Gray contracted and was diagnosed with COVID. Four days after the diagnosis, Gray was sent to a hospital for evaluation and treatment. A week after the diagnosis, she died." *Id.* at 476–77. The woman's daughter brought suit against the center. *Id.* at 476. The center, asserting a similar statutory immunity as Oakland Manor here, moved to dismiss the claim on the ground that the allegations in the petition failed to establish recklessness. *Id.* at 480. The Supreme Court of Missouri concluded that placing an infected person in the mother's room despite her contract for a private room was sufficient to show recklessness. *Id.* at 480–81.

The summary judgment record in this case contains no similar evidence that could support a finding that Oakland Manor acted recklessly or willfully.

Unlike the Missouri case, where the defendant took deliberate action in violation of the patient's contract, the record here reflects only lapses in infection-control protocols. The CMS Report identifies only that Oakland Manor failed to act in certain circumstances and failed to fully comply with certain regulations relating to the prevention of COVID-19 infection. The CMS Report states that Oakland Manor staff would sometimes miss screening residents, not that they never screened residents. The report states that Oakland Manor's staff sanitization and hand hygiene habits were inconsistent, not ignored altogether. Staff wore PPE in the form of masks, gowns, and gloves, but staff did not consistently change their gowns and gloves. Oakland Manor had an isolation area, but the isolation area was not fully sealed. These deficiencies sound in negligence, perhaps even negligence per se, but not recklessness. The deficiencies identified in the CMS Report, whether considered together or in isolation, reflect the lack of adherence to recommended protocols—failures of execution or consistency—rather than intentional acts done with conscious disregard of a known or obvious risk. These are the very type of shortcomings for which the legislature eliminated civil liability as a matter of public policy.

Other courts addressing similar claims against health care providers arising out of COVID-19-related death or injury have reached the same conclusion. *See, e.g.*, *Kennestone Hosp., Inc. v. Turner*, 914 S.E.2d 439, 443 (Ga. Ct. App. 2025) (holding defendants were entitled to COVID-19 immunity from plaintiff's medical malpractice claim for failure to timely administer a medication because while plaintiff "allege[d] conduct that may constitute inattentiveness or negligence," the only support for gross negligence were "conclusory allegations"); *Arbor Mgmt. Servs., LLC v. Hendrix*, 875 S.E.2d 392, 400 (Ga. Ct. App. 2022) (holding a nursing home's poor decisions early in the pandemic "to allow

visitation, socialization, and recreation at the residential facility" did not overcome COVID-19 immunity because the facility's response may have been "belated and fell short, but it did respond"); *Fluhr v. Anonymous Dr. 1*, 234 N.E.3d 912, 919 (Ind. Ct. App. 2024) (holding there was no evidence of conduct sufficient to overcome COVID-19 immunity and affirming summary judgment); *Est. of Campbell v. Woodcliff Health & Rehab. Ctr.*, 318 A.3d 708, 723 (N.J. Super. Ct. App. Div. 2024) ("Plaintiff is simply without facts to demonstrate that defendants' alleged breach of the standard of care . . . amounted to more than simple negligence; certainly there is nothing in the facts alleged to demonstrate an extreme or reckless deviation . . . ."); *Est. of Pierro v Carmel Richmond Healthcare & Rehab. Ctr.*, 241 N.Y.S.3d 299, 302 (App. Div. 2025) (holding that bare allegations of failure to adequately prevent the spread of COVID-19 are insufficient to establish recklessness); *Barbaro v. Eger Health Care & Rehab. Ctr.*, No. 150689/2022, 2024 WL 3405761, at *4 (N.Y. Sup. Ct. July 11, 2024) ("While failing to maintain an adequate infection control program could constitute negligence, it does not rise to the level of morally culpable, reckless conduct necessary to establish gross negligence."); *Hasan v. Terrace Acquisitions II, LLC*, 194 N.Y.S.3d 445, 447 (Sup. Ct. 2023) (holding defendant's failure "to maintain an infection control program with policies designed to provide a safe, sanitary, and comfortable environment in which residents vulnerable to infection reside . . . may demonstrate negligence, [but does] not rise to the level of willful conduct that evidences a high degree of moral culpability"); *Crampton v. Garnet Health*, 155 N.Y.S.3d 699, 711 (Sup. Ct. 2021) ("[W]hile Plaintiffs do make conclusory allegations of reckless misconduct . . . , their Complaint is grounded in allegations of ordinary negligence." (citations omitted)).

Mincer's expert opinion, even when considered in conjunction with the CMS Report, also does not generate a genuine issue of fact regarding recklessness. An expert opinion may give rise to a reasonable inference of recklessness, but the expert opinion must be based on facts in the record or opinion testimony demonstrating recklessness. *See Penny*, 999 N.W.2d at 655; *Feld v. Borkowski*, 790 N.W.2d 72, 81 (Iowa 2010). Although *Feld v. Borkowski* arose in a different context—a recreational sports injury—it provides our most instructive guidance on the type of expert analysis that may be sufficient to generate a genuine issue of fact regarding recklessness. 790 N.W.2d 72. In that case, we considered whether a defendant's actions in a contact sport reached the threshold of recklessness. *Id.* at 80. There, the defendant, a right-handed hitter, hit a baseball toward the third-base line but released his bat with such force and in such an "abnormal, contorted" manner that it traveled sixty feet to strike the first baseman. *Id.* The expert in that case, a seasoned coach, utilized a detailed physics-based analysis to explain that such an event was functionally impossible during a normal swing. *Id.* He concluded the bat must have been deliberately released in "momentary frustration and anger," thereby providing a factual basis for a jury to infer the required mental state. *Id.* at 81.

In contrast to the expert opinion in *Feld* that provided extensive factual detail and opinion showing recklessness, Mincer offered only a conclusory opinion. Mincer conducted no independent factual investigation. She reviewed only the CMS Report and the death certificate. Her resulting opinion lacked any factual detail regarding Oakland Manor's conduct, and it lacked any analysis supporting an inference that Oakland Manor's conduct was intentional rather than merely negligent. This type of conclusory expert opinion is insufficient to create a genuine issue of disputed fact supporting an inference of recklessness.

*See Penny*, 999 N.W.2d at 655. Her labeling the alleged violations as "wanton" without any supporting factual detail and analysis is mere *ipse dixit* and not enough to create an issue of fact for the jury. *See Bristow v. Nemours Found.*, No. N21C–03–240, 2023 WL 4994093, at *9 (Del. Super. Ct. 2023) ("Although the Plaintiffs' expert uses the term 'reckless,' nothing in her report suggests that the precise harm . . . was reasonably apparent and consciously ignored by [the defendant]. Errors of judgment or mere inadvertence do not constitute willful or wanton misconduct.").

## IV.

Courts are required to examine the record "to determine whether there is sufficient evidence from which a jury might reasonably draw an inference of reckless[ness]." *Vipond v. Jergensen*, 148 N.W.2d 598, 600 (Iowa 1967). The plaintiffs failed to support their resistance to the motion for summary judgment with evidence sufficient to create a triable issue of fact for a jury. For these reasons, we conclude the district court did not err in granting the defendant's motion for summary judgment. Because we conclude that the plaintiffs failed to establish recklessness as a matter of law, we need not address the issue of causation, and we vacate the court of appeals opinion regarding causation.

**Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Affirmed.**